# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 13-484V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  
\*  
DEVON JAFFRI,  
\*  
Petitioner,  
\*  
v.  
\*  
SECRETARY OF HEALTH AND  
HUMAN SERVICES,  
\*  
Respondent.  
\*  
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Special Master Corcoran

Filed:  September 30, 2016

Attorney's Fees and
Costs; Influenza ("Flu") Vaccine;
Neuropathic Demyelinating Injury.

*Clifford J. Shoemaker,* Shoemaker, Gentry, & Knickelbein, for Petitioner.

*Lisa A. Watts*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On July 17, 2013, Devon Jaffri filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] alleging that she developed some type of neuropathic demyelinating injury after her November 22, 2011, receipt of the influenza ("flu") vaccine. ECF No. 1. An amended petition was filed on April 7, 2015, alleging in the alternative that the vaccine significantly aggravated a preexisting immune mediated condition, such as juvenile rheumatoid arthritis. ECF No. 52. An entitlement hearing was set for 2017, but the parties were able to settle the matter, filing a stipulation for an award of damages on September

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

13, 2016. ECF No. 85. I adopted this stipulation as my decision granting damages on the same day. ECF No. 86.

Petitioner has now filed a Motion requesting an award of attorney's fees and costs in the total amount of $177,139.95. Application for Attorney's Fees and Costs, dated July 7, 2016 (ECF No. 79) ("Fees App."). Respondent does not formally oppose the request, but has suggested that the total amount sought is considerably higher than reasonable, leaving determination of a proper sum to be awarded to my discretion. For the reasons stated below, and after review of the parties' submissions and relevant decisions of other special masters, I hereby award the total sum of **$169,444.55** in attorney's fees and costs. I also award Ms. Jaffri **$1,247.68** in costs.

## FACTUAL BACKGROUND

As noted above, Ms. Jaffri originally filed her petition in July 2013. The law firm of Shoemaker, Gentry, & Knickelbein ("Shoemaker Firm") represented Petitioner throughout the case's history, and the billing invoices filed in connection with the present fee request reveal the work performed on the matter by Mr. Clifford Shoemaker and his two partners, Renee Gentry and Sabrina Knickelbein. *See generally* Fees App. at 33-66.[3]

As the billing invoices reveal, counsel began work on the matter in February 2013 – approximately five months before the filing of the petition. Fees App. at 33. But it does not appear from review of the invoices from that time period that the matter was overworked, at least at its outset, with Mr. Shoemaker performing less than 25 hours of work on the case. *Id.* at 33. After filing, Petitioner gathered and filed medical records for the next eight months, filing a statement of completion in April 2014. ECF No. 29. Respondent then filed her Rule 4(c) Report on May 2, 2014 (ECF No. 30), challenging Petitioner's right to an entitlement award.

From the spring of 2014 until the winter of 2015, Petitioner filed additional exhibits and worked toward obtaining and filing an expert report, seeking three extensions of time in which to do so. Petitioner finally filed her expert report from Dr. Carlo Tornatore on February 4, 2015 (ECF No. 46), with Respondent filing her own responsive report in May of that year. ECF No. 53. Petitioner thereafter filed even more medical records, plus a supplemental report from Dr. Tornatore in December 2015. ECF No. 67-69. In addition, during this time period Petitioner worked with another expert, Dr. Richard Honaker, to prepare records summaries. *See* Pet'r's Reply to Fees App. at 1. Though Petitioner submitted no report or invoices from Dr. Honaker, it appears that Petitioner's counsel consulted Dr. Honaker for assistance in preparing Dr. Tornatore's

---

[3] Petitioner's counsel did not file the billing invoices as a separate exhibit/attachment to her motion, but instead filed all invoices and receipts associated with the matter as part of a single, massive file. This is not in keeping with the Court of Federal Claims's procedures for electronic filing. *See* Vaccine ECF Rules, Section IV, Filing Requirements, numbered paragraph 10(a). In the future, counsel should adhere to the Court's procedures when filing voluminous exhibits.

supplemental expert report. Respondent then filed a supplemental report of her own in February 2016. ECF No. 70.

Earlier this year, and after obtaining the parties' views in a status conference, I ordered both sides to propose hearing dates for the spring of 2017. Order, dated March 30, 2016. I thereafter scheduled the matter for a hearing, but not long after issuance of the Prehearing Order, the parties reported that they had successfully negotiated a tentative settlement in the matter. I accordingly issued a "15-Week" Order intended to provide Respondent sufficient time to obtain formal approval of the proposed settlement terms. *See* Order, dated June 7, 2016 (ECF No. 78). The parties thereafter officially settled the case, as noted above, agreeing to $175,000.00 in damages. ECF No. 85.

Petitioner filed her fees and costs request while the 15-Week Order was still pending on July 7, 2016. Fees App. With respect to fees, Mr. Shoemaker billed his time at a rate of $385 per hour for work performed in 2013; $400 per hour for work performed in 2014; $415 per hour for work performed in 2015; and $430 per hour for work performed in 2016. *See* Fees App. at 33-67. Ms. Gentry billed her time at $361 per hour for 2013; $400 per hour for work performed in 2015; and $415 per hour for 2016. *Id.* at 67-70. Ms. Knickelbein billed her time at $325 for work done in both 2013 and 2014; $350 for work performed in 2015; and $363 for work in 2016. *Id.* at 70-98. Petitioner requests a total of $136,060.85 in attorney's fees. Fees App. at 1.

Petitioner also requests reimbursement of costs. The vast majority of costs reflects work performed on the case by her experts. She requests $20,200.00 for Dr. Tornatore; $6,200.00 for Dr. Bellanti; and $5,784.70 for Dr. Honaker. ECF No. 79-1 at 1, 143-45. The remaining $8,894.40 in total costs requested reflects the filing fee and the cost of obtaining and copying medical records. ECF No. 79-1 at 1-2. Petitioner also requests $1,247.68 for her own travel-related expenses, which she incurred in order to undergo a medical examination by her experts. Fees App. at 3.

On July 19, 2016, Respondent filed a document reacting to Petitioner's fees request. ECF No. 80 ("Opp."). Respondent asserts that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for Respondent in the resolution of a request by a Petitioner for an award of attorney's fees and costs." Opp. at 1. Respondent added that she "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Opp. at 2. However, she maintained that a reasonable amount for fees and costs in the present case would fall between $27,000.00 and $47,000.00, based on a survey of fee awards in similar cases such as *Drost v. Sec'y of Health & Human Servs.*, No. 01-502V, 2010 WL 3291933 (Fed. Cl. Spec. Mstr. July 30, 2010). Opp. at 3.

Ms. Jaffri filed a Reply in support of her fees request on July 22, 2016. ECF No. 81 ("Reply"). She challenges the basis for the range proposed by Respondent, arguing that the *Drost*

case is clearly distinguishable from the present case. Petitioner further asserts that the numerous medical records filed, the experts' work including initial and supplemental reports, and the complexity of the medical issues in this case as compared to the *Drost* case justify the higher award requested. In light of Petitioner's work preparing the Reply, Petitioner requests an additional $1,275.00 in attorney's fees (representing 2 hours of work for Mr. Shoemaker and 1 hour of work for Ms. Gentry). ECF. No. 81.

During a status conference held on August 8, 2016, I urged the parties to settle Petitioner's pending Motion for attorney's fees and costs. The parties were unable to do so (*see* ECF No. 82); thus, the matter is ripe for adjudication.

## ANALYSIS

### I.    Legal Standards for Fees Requests

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fees award is and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees petition on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of fifty percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight percent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human*

*Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for review den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates. *Avera*, 515 F.3d at 1348. This is the "*Davis* exception" to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, and there is a "very significant difference" between the DC rates and the rates where the attorney practices (the local rate). *Avera*, 515 F.3d at 1349 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Neither the *Davis* nor the *Avera* decisions provided detailed guidance in determining what constitutes a "very significant difference" in rates. *Avera*, 515 F.3d at 1349. However, prior decisions of special masters comment on the topic. In *Hall*, the special master created a chart listing the past relevant cases to decide the issue, finding that a difference between the local and forum rates of 46-60 percent was very significant. *Hall v. Sec'y of Health & Human Servs.*, No. 02-1052V, 2009 WL 3423036 (Fed. Cl. Spec. Mstr. Oct. 6, 2009), *mot. for review den'd*, 83 Fed. Cl. 239 (2010), *aff'd*, 640 F.3d 1351 (Fed. Cir. 2011); *see also Garrison v. Sec'y of Health & Human Servs.*, No. 14-762V, 2016 WL 3022076, at *7 (Fed. Cl. Spec. Mstr. Apr. 29, 2016) (a difference of 19-30 percent was not sufficiently different). By contrast, I determined in *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *12 (Fed. Cl. Spec. Mstr. May 13, 2014) that a difference of 38 percent is "very significant," enough to trigger the *Davis* exception.

After the hourly rate is determined, the reasonableness of the total hours expended must be deliberated. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v.*

*Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero").[4]

Petitioner bears the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

## II.    Petitioner's Attorney's Fees Request

### A.    Applicable Rates

Petitioner requests that Mr. Shoemaker receive rates of $385-$430 per hour for work performed between 2013 and 2016. Ms. Gentry's requested hourly rate is $361-415 per hour for her work on this matter between 2013 and 2016. Finally, Petitioner requests that Ms. Knickelbein receive hourly rates between $325 and $363 for work performed 2013-2016. These rates parallel the forum rates set forth in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). *McCulloch* established hourly rate ranges for attorneys of different levels of experience who are entitled to the forum rate. *McCulloch*, 2015 WL 5634323, at *19. Petitioner acknowledges in fact that the requested hourly rates are based on those established in *McCulloch* and subsequent cases. Reply at 1. I find *McCulloch*'s reasoning sound when applied to calculate forum rates.

Nonetheless, there have been varying conclusions regarding whether the Shoemaker Firm should receive the forum rate, given that the firm's office is located in Vienna, Virginia, and thus not literally "in" the DC forum. Several years ago, Special Master Moran determined that "work performed in a suburb of Washington, D.C. is not the same, for an analysis of the forum rate … as work performed within the District of Columbia." *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627V, 2008 WL 4426040 (Fed. Cl. Spec. Mstr. Aug. 29, 2008). Combining this conclusion with the second part of the *Davis* analysis, and comparing the difference between the local rates and the forum rates, the special master awarded a local rate. *Id.* More recent decisions, however, view the Shoemaker Firm's office location as synonymous with Washington, DC, thus making

---

[4] Although *Mares* did not interpret the Vaccine Act's fees provisions, other fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

application of the *Davis* analysis unnecessary. *Green v. Sec'y of Health & Human Servs.*, No. 13-920V, 2016 WL 2756175, at *2 (Fed. Cl. Spec. Mstr. Apr. 14, 2016); *Miller v. Sec'y of Health & Human Servs.*, No. 13-914V, 2016 WL 2586700 (Fed. Cl. Spec. Mstr. Apr. 12, 2016); *L.A. v. Sec'y of Health & Human Servs.*, No. 12-629V, 2016 WL 1104860, at *5 (Fed. Cl. Spec. Mstr. Feb. 29, 2016).

Because the prior decisions have not extensively explained their reasoning in choosing to award (or not) forum rates to the Shoemaker Firm, I will hereby apply the *Davis* analysis test in order to make a reasoned conclusion.

B.    The Shoemaker Firm is not located in the Forum

As *Sabella* noted, the defined forum of the court is *not* the entire Washington, DC metropolitan area. *Sabella*, 2008 WL 4426040, at *4. The Shoemaker Firm is located in Vienna, Virginia, and although that is near Washington, DC, it is not geographically located within the limits of Washington, DC. Moreover, all of the work performed by the Shoemaker Firm attorneys in this case was performed at their Vienna office. There was no hearing held in DC, and no work on the case occurred in DC that would support a finding that work was performed in the forum. Thus, the first part of the *Davis* exception analysis is satisfied because the majority of the attorneys' work was performed outside the forum.

C.    Forum Rates Should Apply

The second part of the *Davis* analysis involves an inquiry into whether there is a "very significant difference" between the local and forum rates that favors the forum. In order to make this comparison, it is necessary to determine the local rates of Vienna, Virginia.

Guidance in answering that question is found in *Route Triple Seven Limited Partnership v. Total Hockey, Inc.*, 127 F.Supp.3d 607 (E.D. Va. 2015). That case involved a relatively simple landlord-tenant issue in which an attorney's fees award was to be made under a contractual provision between the parties, and began its analysis by considering the "Vienna Metro Matrix," which the plaintiff argued set forth the correct measure of attorney's fees. *Id.* at 619. The Vienna Metro Matrix was generated in an Eastern District of Virginia district court opinion involving complex commercial estate litigation and set forth a range of hourly rates in Northern Virginia for 2011.[5] Due to the relative simplicity of the work completed by the attorneys in *Route Triple Seven*,

---

[5] *See Tech Systems, Inc. v. Pyles*, No. 1:12-CV-374, 2013 WL 4033650, at *7 n.4 (E.D. Va. 2013). For lawyers with 1-3 years of experience, the hourly rate was $250-435; 4-7 years' experience was $350-600; 8-10 years was $465-640; 11-19 years was $520-770; and 20+ years amounted to $505-820. The rates adjusted for inflation at a rate of 3.7%/year for 2015 and 2016 are as follows: $404-693, $537-765, $601-890, $584-948 for 2015; $419-718, $557-793, $623-923, $606-983 for 2016.

however, the district court declined to apply the higher rates in the Vienna Metro Matrix. Instead, the court awarded rates that the Eastern District of Virginia has recognized as fair for the type of work the attorneys completed. *Route Triple Seven*, 127 F.Supp.3d at 620. The rates amounted to "$420 per hour for partners, $275 per hour for associates with several years' experience, $200 per hour for associates with only a few years' experience, and $118.90 per hour for paralegals" for work performed in 2014 and 2015. *Id.*

Although Vaccine Act cases can present complex medical theories and issues, the attorneys who practice in the Program are not faced with many of the challenges and tasks that characterize complex litigation as contemplated in the Vienna Metro Matrix. *Rodriguez*, 632 F.3d at 1385 (explaining that Vaccine Act litigation is not analogous to "complex federal litigation," in part due to its relaxed legal standards of causation and informal proceedings); *see also Route Triple Seven*, 127 F.Supp.3d at 619 (citing the complexity factors in the Vienna Metro Matrix "novel legal issues" and "extensive fact-finding"). Accordingly, I will not apply the rates from the Vienna Metro Matrix, and instead find that the rate ranges stated in *Route Triple Seven* are the appropriate rates to utilize. That local rate must now be compared to the rate set forth in *McCulloch*, which for 2015 was up to $425 per hour for partners with over 20 years' experience. *McCulloch*, 2015 WL 5634323, at *19.

Applying the formula established in *Davis*, the difference between the two rates is 1.19 percent.[6] If this formula is applied for all the *McCulloch* rates relevant to each Shoemaker Firm attorney (as discussed below), the percentage is similar, if not lower. I find that a difference of 1.19 percent and below is not very significant, and therefore the *Davis* exception does not apply.

### a.  Mr. Shoemaker

Mr. Shoemaker has more than 20 years of vaccine litigation experience and has been awarded rates at the top of the forum calculation in other recent cases. *See, e.g., Tedeschi v. Sec'y of Health & Human Servs.*, No. 02-1826V, 2016 WL 4266046, at *5 (Fed. Cl. Spec. Mstr. July 21, 2016) (awarding Mr. Shoemaker $415 per hour for 2015 and $430 per hour for work performed in 2016); *Boylston v. Sec'y of Health & Human Servs.*, No. 11-117V, 2016 WL 3080574, at *3 (Fed. Cl. Spec. Mstr. May 10, 2016) (determining Mr. Shoemaker's appropriate hourly rates were $400 per hour for 2014, $415 per hour for 2015, and $430 per hour for 2016); *Miller*, 2016 WL 2586700, at *8 (awarding Mr. Shoemaker $385 per hour for 2013, $400 per hour for 2014, and $415 per hour for 2015). The requested rates in this case also fall within the rate ranges approved in *McCulloch* for attorneys with more than 20 years of experience. *McCulloch*, 2015 WL 5634323, at *19. Mr. Shoemaker will therefore receive $385 per hour for work performed in 2013, $400 per

---

[6] The *Davis* exception formula to determine the difference between the local and forum rates can be calculated as follows: [(forum rate – local rate) / local rate] x 100. *Barrett*, 2014 WL 2505689, at *12.

hour for work performed in 2014, $415 per hour for work performed in 2015, and $430 per hour for his work in 2016.

### b. Ms. Gentry

Ms. Gentry has received rates for her work in the Vaccine Program similar to what Petitioner requests herein in other cases. *See Boylston*, 2016 WL 3080574, at *3 (awarding Ms. Gentry $375 per hour for 2014, $400 per hour for 2015, and $415 per hour for 2016); *Miller*, 2016 WL 2586700, at *8 (awarding Ms. Gentry $375 per hour for 2014 and $400 per hour for work in 2015); *L.A.*, 2016 WL 1104860, at *5 (granting rates for Ms. Gentry of $361 per hour for 2013, $375 per hour for 2014, $400 per hour for 2015, and $415 per hour for 2016). Additionally, the requested rates fall within the appropriate range for attorneys of her similar experience and skill. *McCulloch*, 2015 WL 5634323, at *19 (determining lawyers with 11 to 19 years' experience may charge $300 to $375 per hour). Ms. Gentry has practiced law since 1995, and vaccine litigation specifically since 2001. *See Miller*, 2016 WL 2586700, at *8. Ms. Gentry thus will be awarded $361 for work performed in 2013 and $400 per hour for work performed in 2015. Although the 2016 inflation-adjusted rate is somewhat lower than her requested rate, I find that $415 per hour for work performed in 2016 is reasonable and in accordance with the decisions of other special masters. I will award $415 per hour for Ms. Gentry's work performed in 2016.

### c. Ms. Knickelbein

Ms. Knickelbein has also been awarded the rates requested herein previously. *See Boylston*, 2016 WL 3080574, at *3 (determining $365 per hour for Ms. Knickelbein's work in 2016 was appropriate); *L.A.*, 2016 WL 1104860, at *5 (awarding $325 per hour for work completed in 2013 and 2014 and $350 for work in 2015). The suggested rates for an individual like Ms. Knickelbein, with 11 to 19 years' experience, for 2014 and 2015 is between $300 and $375 per hour. *McCulloch*, 2015 WL 5634323, at *19. Ms. Knickelbein has approximately 14 years' experience. Her requested rates fit the range suggested in *McCulloch*, so I will award $325 per hour for work in 2013 and 2014, $350 per hour for work in 2015, and $363 per hour for work performed in 2016.[7]

---

[7] After a general review of the billing invoices, I see some instances where it appears the tasks Ms. Knickelbein performed would have been more appropriate for paralegals. For example, Ms. Knickelbein billed time on several occasions to reviewing medical records for completeness. *See generally* Fees App. at 72-73. She also billed time to preparing and filing exhibits. *See generally id.* at 83, 88, 91. These activities have been suggested to be better suited for paralegals, and Ms. Knickelbein's hourly rate has accordingly been reduced in the past. *See, e.g., Picotti v. Sec'y of Health & Human Servs.*, No. 99-506V, 2010 WL 3920511, at *4-5 (Fed. Cl. Spec. Mstr. Sept. 14, 2010); *Turpin v. Sec'y of Health & Human Servs.*, No. 99-535V, 2008 WL 5747914, at *5-6 (Fed. Cl. Spec. Mstr. Dec. 23, 2008). Overall, however, in this case I am unable to discern whether any of these billing entries are actually objectionable, and (coupled with Respondent's lack of any particular objections) I will therefore not reduce Ms. Knickelbein's rate. However, in the future, I will carefully consider these billing entries to ensure that Ms. Knickelbein is not performing paralegal work but charging attorney time.

D.      Hours Devoted to Matter

As noted above, special masters are not obligated to scrutinize each entry on a billing record in search of inefficiency. Nor has Respondent identified any objectionable billing instance or category for me. Respondent does state a range of fees, however, which she views as more appropriate for this matter, and that range markedly contrasts with the sum of total work performed. *See* Respondent's Response to Fees App. at 3.

I agree with Petitioner that the case cited to support Respondent's range is distinguishable from the present case and does not aid my decision here. The present matter involved voluminous medical records, extensive communication between Petitioner and counsel to update Petitioner's changing medical status throughout the case, and questions involving Petitioner's medical treatment and its effect on her injury. In contrast, *Drost* was relatively straightforward and less consuming of counsel's time, as evidenced by that petitioner's request of only $43,883.91 in attorney's fees and costs (compared to this matter's requested fees and costs of $177,139.95). *See Drost*, 2010 WL 3291933, at *10, *15. Additionally, while *Drost* spanned almost ten years, the case was stayed for much of that time and did not have considerable activity until the final two years. *Id.* at 1. This present matter has required work for the majority of the four year period necessary to reach a settlement, indicating that a greater fees award is appropriate.

I otherwise do not find that the matter was overworked. The procedural history reveals that Petitioner was required to substantiate her case to Respondent's satisfaction before settlement was possible (and to that end had to file many medical records, as well as an initial and supplemental expert report). Though this matter ultimately did not require a hearing, fees and costs associated with discussions necessary to settle a case are properly reimbursable. *Thomas v. Sec'y of Health & Human Servs.*, No. 92-46V, 1997 WL 74664, at *7 (Fed. Cl. Spec. Mstr. Feb. 3, 1997) (rejecting Respondent's assertion that fees and costs should necessarily be lower when a case settles before hearing). Thus, the higher amount of fees requested is not inappropriate in itself.

Such circumstances justify an award of the majority of time billed, with the following exceptions:

a.      Over the duration of this case, numerous time entries reveal that Ms. Knickelbein billed time to reviewing non-PDF orders and other simple entries filed on CM/ECF, for a total of 2.5 hours.[8] *See* Fees App. at 70-98. These simple entries did not warrant a full six minutes of Ms. Knickelbein's time in each case, although I do agree she should be compensated for some of the

---

[8] Ms. Knickelbein billed for this activity for .5 hours in 2013, 1.1 hours in 2014, .7 hours in 2015, and .2 hours in 2016. Fees App. at 70-98.

time. I therefore will reduce each year's amount by half, awarding **.25** hours for 2013, **.55** hours for 2014, **.35** hours for 2015, and **.1** hour for 2016, for a total of 1.25 hours;

      b.      Several times throughout the billing records, Mr. Shoemaker billed to "review pleading," for a total of 3 hours.[9] *See* Fees App. at 33-67. While it is difficult to tell from the description of the activity, it appears that these hours were similarly billed to review minor filings on CM/ECF. I will thus reduce the billed hours by half for each year, awarding **.25** hours for 2013, **.5** hours for 2014, **.6** hours for 2015, and **.15** hours for 2016, for a total of 1.5 hours allowed; and

      c.      On July 22, 2016, Petitioner filed a Reply in support of attorney's fees and costs and requested that Mr. Shoemaker and Ms. Gentry receive $1,275.00 for their work preparing the Reply. Reply at 3. While the attorneys did have to consult the *Drost* decision, the Reply was mostly pro-forma and relatively simple. Therefore, I will reduce the amount requested by two-thirds, awarding .7 hours to Mr. Shoemaker and .3 hours to Ms. Gentry.

C.     <u>Fees Award Summary</u>

Based upon all of the above, I award the following attorney's fees:

| Attorney | Year Work Performed | Hours Awarded | Hourly Rate Awarded | Total Amount |
|---|---|---|---|---|
| **Shoemaker** | 2013 | 41.75 | $385 | $16,073.75 |
| | 2014 | 44.2 | $400 | $17,680.00 |
| | 2015 | 124.2 | $415 | $51,543.00 |
| | 2016 | 23.45[10] | $430 | $10,083.50 |
| | | | | |
| **Gentry** | 2013 | 5.5 | $361 | $1,985.50 |
| | 2015 | 1.6 | $400 | $640.00 |
| | 2016 | 20.65[11] | $415 | $8,569.75 |
| | | | | |
| **Knickelbein** | 2013-2014 | 51.8 | $325 | $16,835.00 |
| | 2015 | 29.65 | $350 | $10,377.50 |
| | 2016 | 4.6 | $363 | $1,669.80 |
| | | | | |
| | | | **Total Attorney's Fees Awarded:** | **$135,457.80** |

---

[9] Mr. Shoemaker billed this activity for .5 hours in 2013, 1 hour in 2014, 1.2 hours in 2015, and .3 hours in 2016. *See* Fees App. at 33-67.

[10] This number includes the .7 hours of work awarded to Mr. Shoemaker for preparing Petitioner's Reply.

[11] This number includes the .3 hours of work awarded for Ms. Gentry's work on Petitioner's Reply.

**III.    Litigation Costs**

Petitioner requests several categories of costs. First, Petitioner asks for $20,200.00 for her expert, Dr. Tornatore, who prepared two expert reports in this action. Fees App. at 103. Dr. Tornatore charged $400 per hour for 50.5 hours of work. This work involved reviewing medical records, writing an initial expert report, reviewing the reports of Respondent's one expert, and finally creating a supplemental expert report. ECF No. 79-1 at 143-44.

Overall, it appears Dr. Tornatore's charges were slightly excessive. In a case earlier this year, Dr. Tornatore spent 48.5 hours to write three expert reports, review "lengthy medical records," and review the individual expert reports of Respondent's three experts, billing a total of $19,400.00. *L.A.*, 2016 WL 1104860, at *6. This present case required far less work from Dr. Tornatore and was settled without hearing, yet he billed 50.5 hours – nearly the same amount. His supplemental report, moreover, was prepared after Dr. Honaker reviewed the medical records and created a summary. Additionally, nearly half of Dr. Tornatore's supplemental six-page report was pictures of MRI scans, so his analysis in the expert report was limited and not as time-intensive as a longer expert report might be. Further, Dr. Tornatore was only required to address the report of Respondent's one expert.

Because this case overall required less work, it was unnecessary for Dr. Tornatore to bill as much time as he did, especially in consideration of what he has billed in more difficult cases. I will therefore reduce his time by 10.5 hours and reimburse him for only 40 hours of work, billed at the rate of $400, for a total of $16,000.00.

Petitioner next requests $6,200.00 for Dr. Bellanti's charges. Dr. Bellanti's charges and hourly fee are documented and substantiated. ECF No. 79-1 at 145. I do not find any of his time entries or the overall amount of hours spent unnecessary, though his report was never filed. I have previously awarded fees for expert reports that were prepared but not filed where the report appears to have played a role in the case's advancement nevertheless. *See, e.g.*, *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *16-17 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). Dr. Bellanti prepared an expert report in this matter when the case was still scheduled for hearing, and his involvement in the case appears to have been helpful in resolving this matter. Thus, I will award the full $6,200.00 for Dr. Bellanti's services.

Petitioner also requests $5,784.70 for Dr. Honaker. As noted above, and as referenced in Petitioner's Reply, Dr. Honaker summarized medical records to assist Dr. Tornatore in preparing his supplemental report. Reply at 2. While I did not approve the use of Dr. Honaker in advance, I have previously awarded costs for a consulting expert's record review. *See Lemaire v. Sec'y of Health & Human Servs.*, No. 13-681V, 2016 WL 5224400, at *6 (Fed. Cl. Spec. Mstr. Aug. 12, 2016). Further, other special masters have allowed the use of consultants for these types of

activities, as long as the cost is reasonable. *See, e.g.*, *Lamar v. Sec'y of Health & Human Servs.*, No. 99-584V, 2008 WL 3845157, at *15 (Fed. Cl. Spec. Mstr. July 30, 2008) (awarding the consulting expert $250 per hour for two hours of work, totaling $500.00); *Ray v. Sec'y of Health & Human Servs.*, No. 04-184V, 2006 WL 1006587, at *12 (Fed. Cl. Spec. Mstr. Mar. 30, 2006) (awarding $1,562.50 to petitioner's consultant, Dr. Geier).

I am unable to determine if Dr. Honaker's hours or rate were reasonable, as Petitioner has not supplemented her fees application with any invoices from Dr. Honaker. Additionally, it appears that utilizing Dr. Honaker might have actually slowed the case's progress, as Petitioner originally indicated during a status conference on July 10, 2015, that she would file Dr. Tornatore's supplemental expert report on or before October 12, 2015. ECF No. 60. However, Petitioner required an extension of time, and the supplemental report was not filed until December 14, 2015. ECF No. 67. Though additional medical records were filed prior to the preparation of Dr. Tornatore's supplemental report, the records were fairly short and manageable. Under these circumstances, it is not appropriate to award Dr. Honaker the full amount requested, as these costs have not been shown to be reasonably incurred. As a result (and in keeping with the Supreme Court's admonition to achieve "rough justice" in awarding fees), I will reduce Dr. Honaker's requested amount by half, awarding $2,892.35.

Petitioner also requests the amount of $8,894.40 for copying, filing fees, and similar litigation charges incurred solely by the Shoemaker Firm. Fees App. at 98-103. Respondent does not object to these costs as unreasonable, and upon review of the record I find that they are acceptable. I therefore award this sum in its entirety.

Finally, Petitioner represents that she has incurred a total of $1,247.68 in expenses herself on hotel costs, airfare, and other travel expenses related to her examination by Petitioner's experts. Fees App. at 3. Respondent does not object to these costs, and I find them to be reasonable. I will also award this entire sum.

**CONCLUSION**

The Vaccine Act permits an award of reasonable attorney's fees and costs. Section 15(e). Based on the reasonableness of Petitioner's request, as well as my reductions and hourly fee rate decisions set forth above, I hereby GRANT in part Petitioner's Motion for attorney's fees and costs, as follows:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Shoemaker's Fees | $96,549.00 | $1,168.75 | $95,380.25 |
| Ms. Gentry's Fees | $11,485.75 | $290.50 | $11,195.25 |
| Ms. Knickelbein's Fees | $29,301.10 | $418.80 | $28,882.30 |
| Shoemaker Firm Costs | $8,894.40 | none | $8,894.40 |
| Dr. Tornatore's Fees | $20,200.00 | $4,200.00 | $16,000.00 |
| Dr. Bellanti's Fees | $6,200.00 | none | $6,200.00 |
| Dr. Honaker's Fees | $5,784.70 | $2,892.35 | $2,892.35 |
| Petitioner's Costs | $1,247.68 | none | $1,247.68 |

Accordingly, I award a total of **$169,444.55** as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Clifford Shoemaker, Esq. I award separate costs payable to Devon Jaffri in the amount of **$1,247.68**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[12]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.